[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiff, Noel Cusanelli, and the named defendant, Nathan Minervini, III, are each holders of fifty percent of the shares of the defendant corporation, Minervini's Pizzeria Restaurant, Inc. ("the corporation"). Cusanelli has brought suit, claiming Nathan Minervini, III misused finds, assets and other benefits belonging to the defendant corporation. The plaintiff's complaint is in four counts. The first count claims misuse by Nathan Minervini, III of the corporation's funds and assets; the second count claims Nathan Minervini, III tortiously interfered with the reasonable business expectations of the defendant corporation; the third count claims violations by Nathan Minervini, III of the Connecticut Unfair Trade Practices Act, General Statutes, §42-110a, et seq. ("CUTPA"); the fourth count claims conduct by Nathan Minervini, III resulted in his unjust enrichment.
The defendants filed their answer, denying all material allegations, asserting special defenses as to all four counts, and asserting two counterclaims.
The special defense to each count claims that any damages to the plaintiff were caused by his own actions in that he failed to understand his duties to the corporation and failed to pay obligations in that he:
a. resigned as backer on the cafe license so as to prevent the corporation from selling beer and wine;
b. had the phone company disconnect service so as to prevent the business from maintaining telephone service, thereby eliminating business from takeout orders and in conducting normal business activities;
c. resigned as a corporate officer and making no provision for or cooperating in the election of a replacement;
d. caused a large arrearage to accumulate on the gas bill, jeopardizing service and causing the corporation to expend monies to bring the account current when the Plaintiff was to have paid such arrearage; CT Page 11507
e. failed to timely pay the quarterly tax monies for the first quarter of 1999;
f. notified the beer supplier that the corporation could not legally be supplied with beer;
g. failed to turn over the corporate books to the defendant, Nathan Minervini, III, the corporate secretary;
h. notified the electric company to turn off electric service to the restaurant.
The defendants' counterclaim is in two counts; the first count claims that the plaintiff's actions were intended to and did hinder operation of the corporate defendant and caused financial damage to the defendants. The second count claims that the actions of the plaintiff, Cusanelli, constituted violations of the Connecticut Unfair Trade Practices Act, General Statutes, § 42-110a et seq. ("CUTPA").
The plaintiff, Cusanelli, filed his reply, denying each and every allegation of the defendants' special defenses and counterclaims.
Included in Cusanelli's claims for relief was appointment of a receiver and dissolution of the defendant corporation. On January 10, 2000, the court (Pittman, J.) appointed Attorney Alfred J. Zullo as receiver. Attorney Zullo filed a report of receiver on February 28, 2000. The report was accepted and the receiver discharged on June 24, 2000.
On August 16, 2000, partial judgment was entered by the court(Silbert, J.), in accordance with a stipulation by the parties, dissolving the defendant corporation.
On September 7, 2000, the court (Silbert, J.) entered judgment for sale of corporation's assets, again appointing Attorney Zullo as receiver, to preserve and sell the corporation's assets. On November 20, 2000, the receiver filed his report of no sale, which was accepted by the court(Silbert, J.) on December 11, 2000. On December 20, 2000, the court(Silbert, J.) entered its judgment for auction sale of corporation's assets, continuing Attorney Zullo's appointment as receiver and ordering an auction sale of the equipment and contents of the subject restaurant. On January 29, 2001, an auction sale was conducted, resulting in the receipt by the receiver of the sum of sixteen thousand, four hundred sixteen and eleven one hundredths dollars ($16,416.11).
On March 15, 2001, a hearing on the complaint and counterclaims was CT Page 11508 held, after which the parties rested and the matter was continued for briefing, the filing of a deposition transcript and the filing of the receiver's report concerning the auction and its aftermath. The said report was filed on May 15, 2001.
 II
At the time of trial, the plaintiff's counsel sought to introduce transcripts of the deposition of the plaintiff, Noel Cusanelli and the deposition of Mark Cusanelli. The deposition transcript of Noel Cusanelli was admitted without objection. The defendants objected to the admission of Mark Cusanelli's deposition transcript and that objection was sustained. The plaintiff then rested. Nathan Minervini III testified on behalf of the defendants, after which the defendants rested.
 III
The court finds as follows:
In 1994, Nathan Minervini III and one Robert Milone were each the owners of 50% of the shares of the defendant corporation, Minervini's Pizzeria Restaurant, Inc., which operated a pizzeria restaurant in leased premises located at 457 Main Street in East Haven. In February, 1996, the plaintiff, Noel Cusanelli, acquired Milone's 50% share in the corporation in satisfaction of a debt owed Cusanelli by Milone. Cusanelli valued the 50% share as worth $48,000. He testified he paid Milone $10,000 at the time of purchase. Once he purchased his interest in the business, Cusanelli assumed the titles of president and secretary of the corporation while Minervini held the titles of vice president and treasurer. There was no board of directors established for said corporation and no annual meetings were held. Cusanelli's wife's name was on the restaurant's liquor permit as backer, and Cusanelli's name was listed as guarantor on various utility accounts of the corporation and on the lease of the premises. Once he had purchased his interest in the corporation, Cusanelli took no part in the day-to-day operation of the pizzeria. Rather, the business was run by Minervini and Mark Cusanelli, the plaintiff's brother. The division of labor was that Minervini operated the restaurant, including ordering supplies, while Mark Cusanelli, with some participation by Minervini, handled the financial aspects of the business, including bill payments, bank deposits, financial record-keeping. Both Mark Cusanelli and Nathan Minervini, III received salaries from the corporation. This arrangement continued from 1996 until early 1999. In early 1999, Minervini and the Cusanellis had a falling out. The plaintiff, Noel Cusanelli, testified that Minervini threatened to kill him. By March, 1999, Mark Cusanelli ceased working for the restaurant. In April, 1999, the plaintiff, Noel Cusanelli, resigned CT Page 11509 as president and secretary of the corporation, removed his name as guarantor from the corporation's lease and utility accounts, telephone, gas, electric, and had his wife's name removed as backer of the restaurant's liquor permit. As indicated, supra, the said corporation was dissolved by court order on August 16, 2000. Minervini continued to operate the restaurant until late December, 2000.
 IV
The gravamen of the plaintiff's claims against Nathan Minervini, III is that, from the time of Mark Minervini's departure from the business, on or about April 1, 1999 until the closure of the restaurant on or about January 1, 2001, the defendant, Nathan Minervini, III took control of the restaurant, operated it as if it was a sole proprietorship, appropriated all of its assets and retained all of its income. The plaintiff claims this course of conduct constitutes misuse by Minervini of funds, assets and benefits of the defendant corporation; tortious interference with the reasonable business expectations of the defendant corporation;[1]
unjust enrichment of the defendant Minervini; and violation of CUTPA by the defendant Minervini. The plaintiff has failed to establish any of his claims by a fair preponderance of the evidence.
It is undisputed that from the time of Mark Cusanelli's departure until January 1, 2001, Nathan Minervini, III continued to operate the restaurant. However, the corporation remained in existence until its dissolution by court order on August 16, 2000. The evidence is that following the onset of the dispute between the parties Minervini continued to operate the restaurant as he had done previously, and plaintiffs claims that the defendant Minervini misused assets of the corporation were not established. There was no evidence that the plaintiff at any time sought to have the restaurant business cease operation. To the contrary: the plaintiff's complaint was filed on September 22, 1999, with a return date of October 5, 1999. During many months of litigation there is no indication that the plaintiff sought to compel the defendant Minervini to cease operation of the restaurant pending resolution of the dispute between the parties. In closing argument at the hearing of March 15, 2001, counsel for the plaintiff stated: "For several months Mr. Minervini was allowed to run the business primarily because it clearly would be a more valuable business, clearly be more enticing to a prospective buyer if the business were up and running. So he was allowed to continue to run the business. . . ." (Transcript, March 15, 2001 Hearing, p. 28). This assertion by counsel is in accordance with the evidence and the court finds the plaintiff has failed to establish that the action by Minervini in continuing to operate the restaurant constituted usurpation of the corporate assets" or a taking of the defendant corporation's assets Moreover, the plaintiff has failed to CT Page 11510 establish that the manner in which Minervini operated the business constituted misuse of corporate assets. During the period in question Minervini and members of his family continued to draw salaries but there was no showing that this was in any way misuse of corporate assets. Noel Cusanelli testified that, to his knowledge, the corporation made no money in the period, February, 1996 through April, 1999 (Deposition Transcript, March 7, 2001, pp. 23-24). Nathan Minervini, III testified that, as far as he knew, the business never made a profit (Transcript, March 15, 2001 hearing, pp. 9, 12). There was evidence that the volume of business dwindled during the period April, 1999 to January, 2001, but the plaintiff has failed to establish that this diminution was caused by misconduct of the defendant Minervini.
The plaintiff, although naming the corporation as a defendant in this action, claims that the defendant Minervini, by his conduct, "tortiously interfered with the reasonable business expectations of the defendant corporation." This court has long recognized a cause of action for tortious interference with contract rights or other business relations" (citations omitted), Solomon v. Aberman, 196 Conn. 359, 364. The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship [or business expectation] and that the defendant(s), "knowing of that relationship [or expectation], intentionally sought to interfere with it; and as a result, the plaintiff claimed to have suffered actual loss" Id. (citation omitted). The court finds that Minervini's operation of the restaurant in the period from April, 1999 to January, 2001, did not constitute tortious conduct. While any threats made by the defendant Minervini toward Noel Cusanelli are not to be condoned, the plaintiff has failed to establish any loss to the corporation as a result of such conduct. The plaintiff has failed to establish that the defendant Minervini tortiously interfered with the reasonable business expectations of the defendant corporation.
The plaintiff alleges that the defendant Minervini's conduct resulted in Minervini's being unjustly enriched. Unjust enrichment applies whenever justice requires compensation to be given for property or services rendered under a contract and no remedy is available by an action on the contract, Gagne v. Vaccaro, 255 Conn. 390, 401 (quotation marks, citation omitted). The doctrine of unjust enrichment has three basic requirements: (1) the defendant was benefitted; (2) the defendant unjustly failed to pay the plaintiff for the benefits; and (3) the failure of payment was to the plaintiff's detriment, Id., at 409 (citations omitted). The measure of recovery ordinarily is not the loss to the plaintiff, but the benefit to the defendant, Hartford WhalersHockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 285 (citation omitted). In the instant case, the plaintiff has focused on his claims of loss but has not shown or quantified any benefits to the defendant. The CT Page 11511 fact that Minervini drew a salary during the period April, 1999 to January, 2001, does not constitute unjust enrichment. The plaintiff has failed to establish, by a fair preponderance of the evidence, unjust enrichment by the defendant Minervini.
The plaintiff maintains he is entitled to all the net proceeds of the auction sale and that any unpaid bills of the business are the responsibility of the defendant Minervini, incurred by Minervini after he seized control of the business. The court is not persuaded. The corporation continued in existence from April, 1999, to its dissolution on August 16, 2000. The plaintiff acquiesced in the continued operation of the restaurant as a means of preserving the value of the business. During this period, the defendant Minervini, as an officer and 50% shareholder of the corporation, had the authority to bind the corporation for payment of any and all debts reasonably incurred to maintain the operation of the restaurant. Following the dissolution of the corporation, Minervini continued to operate the restaurant until January, 2001 and it is reasonable to infer that some, if not all, claims of creditors still unsatisfied were incurred for goods or services rendered to the business in the period following the corporation's dissolution. The plaintiff claims these bills are and should be the personal responsibility of the defendant Minervini. The court concludes that the continued operation of the restaurant after the dissolution of the corporation was a legitimate effort to preserve corporate assets for the benefit of shareholders and any and all debts incurred in the name of the corporation during this period are the responsibility of the corporation. Accordingly, an order will issue to the receiver, directing, inter alia, that the receiver pay all sums due and owing for goods or services provided for operation of the subject business up to the time of its closing on or about January, 2001 and after paying all valid debts of the defendant corporation, distribute the remaing assets if any, of the said corporation in equal shares to Noel Cusanelli and Nathan Minervini, III.
 V
The gravamen of defendant Minervini's claims, both in his counterclaim and special defenses is that the plaintiff, Cusanelli, in resigning as an officer of the corporation, removing his name as guarantor of the utility bills and lease, arranging to have his wife's name removed as backer of the restaurant's liquor permit, failing to pay certain bills and failing to turn over corporate books to the defendant Minervini, breached his fiduciary duties to the corporation, hindered the operation of the corporate defendant and caused financial loss to the defendants. The defendants have failed to establish such breach by a fair preponderance of the evidence. The defendants have failed to show that Noel Cusanelli's CT Page 11512 resignation as president and secretary of the corporation constituted breach of his fiduciary duty to said corporation, nor that Cusanelli's removal of his nameas guarantor for utility or lease payments, or his removal of his wife's name from the liquor permit breached such fiduciary duty. Minervini claims Noel Cusanelli failed to turn over "corporate books" to Minervini and that Mark Cusanelli departed with $11,000 in corporate assets, but these claims remain as mere allegations, unproven. Minervini claims that Noel Cusanelli "left without putting into place some mechanism to allow an orderly transition for the pizzeria business." What, in the circumstances, such mechanism might be, is not explained, nor is Cusanelli's duty to produce such mechanism established. The defendants have failed to establish, by a fair preponderance of the evidence, that the plaintiff breached any fiduciary duties owed the defendant corporation. Moreover, the defendants have failed to establish that the plaintiff's acts or omissions cited caused financial loss to the corporation or to Minervini.
 VI
The plaintiff, Noel Cusanelli, and the named defendant, Nathan Minervini, III, each claim that the other's course of conduct in this matter constituted a violation of CUTPA. Neither party has established his claim by a fair preponderance of the evidence.
The elements of a CUTPA claim are well established. General Statutes, § 42-110b states: No person shall engage in unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce. Section 42-110g provides that any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by § 42-110b may bring an action . . . to recover actual damages . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the "cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise — in other words, it is at least within the penumbra of some common law, statutory, or other concept of unfairness; (2) whether it is immoral, unethical or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other business persons] . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser CT Page 11513 extent it meets all three (citations, internal quotation marks omitted).Willow Springs Condominium Association, Inc. v. Seventh BRT DevelopmentCorporation, 245 Conn. 1, 43. Whether a practice is unfair and thus violates CUTPA is an issue of fact. Id. (citation, quotation marks omitted).
In order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act and that "as a result of' this act, the plaintiff suffered an injury. The language "as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff. Abrahams v. Young Rubicam, Inc., 240 Conn. 300,306 (citation omitted). The actions of the defendant Minervini which the plaintiff complains of are, first, threats by Minervini against the plaintiff, and, second, Minervini disregarding the corporation and operating the business as a sole proprietorship. Assuming, arguendo, that either or both of these actions are prohibited, the plaintiff has failed to establish that any action by the defendant Minervini was the proximate cause of a loss to the plaintiff. The plaintiff never received a return on his investment and has lost his investment. But the plaintiff has failed to establish that such loss was proximately caused by the defendant Minervini's conduct. Undoubtedly, the business declined over time and ultimately closed its doors, but the plaintiff failed to establish a causal nexus between that failure and prohibited conduct by the defendant Minervini. The plaintiff cites Fink v. Golenbock,238 Conn. 183, in support of his claims. In Fink one shareholder in a closely held corporation brought a CUTPA claim on behalf of the corporation against the other shareholder. Fink is distinguished from the instant case in that the plaintiff in Fink was able to establish that the defendant's prohibited conduct was the proximate cause of the corporation's loss, and to quantify such loss. Not so here.
The court finds that the plaintiff, Noel Cusanelli, has failed to establish, by a fair preponderance of the evidence, that the defendant, Nathan Minervini, III violated the provisions of the Connecticut Unfair Trade Practices Act, General Statutes, § 42-110a et seq.
 VII
The defendants' counterclaim, alleging violation by the plaintiff of CUTPA, need not long detain us. The plaintiff's actions alleged to have violated CUTPA are the same alleged to have constituted breach of fiduciary duty, namely, the plaintiff's resignation as president and secretary of the defendant corporation; his removal of his name as guarantor of the business' utility bills and lease; his arranging to have his wife's name removed as backer of the restaurant's liquor permit; failure to pay a gas bill, allowing an arrearage to accumulate; failure CT Page 11514 to pay quarterly taxes for the first quarter of 1999; failure to turn over corporate books to the defendant Minervini. As indicated, supra, the defendant has failed to establish that any acts or omissions complained of violated the plaintiff's fiduciary duty to the defendant corporation, and the defendants have failed to establish, by a fair preponderance of the evidence, that the plaintiff's conduct was immoral, unethical, oppressive or unscrupulous. The defendants have failed to establish, by a fair preponderance of the evidence, that the plaintiff violated the provisions of the Connecticut Unfair Trade Practices Act, General Statutes, § 42-110a et seq.
 VIII
On the complaint, judgment may enter in favor of the defendants, Nathan Minervini, III and Minervini's Pizzeria Restaurant, Inc. as against the plaintiff, Noel Cusanelli.
On the counterclaim, judgment may enter in favor of the plaintiff, defendant on the counterclaim, Noel Cusanelli, as against the defendants, Nathan Minervini, III and Minervini's Pizzeria Restaurant, Inc., plaintiffs on the counterclaim.
An order will be issued to the receiver concerning payment of corporate bills outstanding, distribution of corporate assets and winding up the affairs of the defendant corporation.
By the Court,
Downey, J.T.R.